*ROBINS* vs. *WEEKS.*

APPEAL from the court of probates of West Feliciana.

PORTER, J. delivered the opinion of the court. This appeal has been taken from a decision of the court of probates in relation to a partition of the estate of Ann Eliza Weeks, deceased, who was sister of the appellee, and daughter of the appellant. The intestate died in Maryland, and the rights of the parties before us depend on the fact of her *domicil* at the period of her death. If in the state of Louisiana, the mother became heir to all the estate real and personal. If in Maryland, she only inherits the former, and the latter goes to the brother.

The father of the appellee was a native of this state, and resided in the county of Feliciana. In the year 1806, he went to Maryland, and there married the appellant. Soon after their marriage they came to Louisiana. In the years 1807 and 1808, they had two children—the intestate, and the appellee. In the year 1812, the father died; and in the year 1813, the mother returned to Maryland; but before leaving this state, she gave bond and

EasternDis'ct
*Feb'ary*, 1827

Tutors, other than those by nature, are deprived of the tutorship, *ipso facto*, by removing out of the state.
And if they take with them the minor, his domicil remains that of his origin.
The mother who looses her tutorship by marriage, and is afterwards reappointed, holds the office under the law, and not by natural right.

security to return. While in Maryland, she intermarried with one obins. This event took place in 1814, and in the year 1816, she returned to Louisiana with her second husband. They settled on a plantation belonging to the minor children. In the year 1819, the estate was given up by the executors of Weeks to the representatives of the minors. Robins, the step father, was appointed tutor to one of them, and curator *ad bona* to the other. He remained here until 1821, when he again went to Maryland, and took with him his wife, the appellee, and his sister. In 1823, he returned, rendered his account as tutor and curator, and after remaining five months in this state, he went back to Maryland. In the year 1824, Ann Eliza Weeks, whose estate is now the subject of contestation, died in the state of Maryland. And in the year 1826, Robins returned to this state, bringing his family with him, and since died here.

A good deal of evidence, parol and written, was introduced in the court of the first instance, to ascertain the object of these different changes of residence:—By the one party, to show that Robins' intention was to remain

a citizen of the state of Maryland—by the
other, that he considered himself a citizen of
Louisiana, and that his removal was but tem-
porary; for the benefit of his own health, and
the education of the children whom the law
had intrusted to his care.

In this court the argument has been exten-
ded to an examination of the law of domicil,
both on general principles, and the particu-
lar regulations of the state of Louisiana; but
the view which the court has taken of the
case, does not require an examination of
these doctrines, nor, consequently, the ex-
pression of any opinion in relation to them.

Our law provides, that "the domicil of
the minor, not emancipated, is with the tu-
tor."   *C. code*, 12; 7.

The same work declares, that "if the tu-
tor shall die, or absent himself from the state,
another tutor shall be appointed in his
stead."   *Ib.* 64, *art.* 60.

If the tutorship ceases *ipso facto* by the
removal, there can be no question that the
domicil of the minor, whose estate is now the
subject of contestation, was never changed;
for, at the moment the tutor left the state
with the intention of fixing his domicil per-

manently in Maryland, he lost the office. It followed, *he had no domicil as tutor*, in the place to which he removed; and if the minor resided there, she did not reside with her tutor, because he ceased to be such by removing.

But if, on the contrary, the removal did not of itself, make the tutorship cease, but merely furnished cause for removal, then the affirmative is not so clear; though even considered in that point of view, the same result would, we believe, be attained.

We think the first is the sound construction. The law says: "If the tutor die, or *absent himself* from the state, the judge shall appoint another." Now in case of death, it is of course, that the tutorship ceases. The provision cited by putting the case of absence with it, and directing the same thing to be done in either event, evidently contemplated the same consequences to result from both; and where the law does not distinguish, we should not.

Every motive of sound policy supports this construction. The office of tutor is not only of great importance to the minor, but the public; who are deeply interested in

protecting those who are not of an age to protect themselves. Tutors, therefore, other than those by nature, who hold their appointment under the law, should not be permitted to place themselves out of the reach of the law. To suffer them to remain such, in the uncertainty that must frequently exist as to their real intention, would often cause a serious injury to the minor. It is important that if they intend to remove permanently, they should give notice to that effect; surrender the office before they depart, and have another appointed in their stead. And if they do not, it is right they should be responsible for all the injury the minor may sustain by the act of their removal, without being permitted to enjoy any of the benefits which might result from the administration of the property entrusted to their charge.

It is proved, however, in this case, that the mother, after her marriage, was joined with her second husband in the office of tutor and curator, and that she removed also with the minors. It becomes, therefore, necessary to examine, whether she was to be considered, at the time of removal as tutor by nature, for if she was, the tutorship did

Eastern Dis't
Feb'ary, 1827

Robins
vs.
Weeks.

EasternDis'et
*Feb'ary, 827*

ROBINS
*vs.*
WEEKS.

not cease. It has been decided in this court, that a natural tutor has a right to take his children with him in case of expatriation, and that he does not cease to be tutor by leaving the state. 4 *Martin*, 715.

We think that the mother who marries a second time without taking the advice of a family meeting, cannot, in case of re-appointment, be considered as holding the office by natural right, but under the law.

By a provision in our code, it is declared "that the mother who wishes to marry again' must, previous to the celebration of the marriage, apply to the judge, in order to have a meeting of the family called for the purpose of deciding whether she shall remain tutor. And that if she neglect to call such meeting, she shall be *ipso facto* deprived of the tutorship."

The fact of the appointment of the mother and step father some time after the marriage, is proof that the mother neglected taking the advice of a family meeting; otherwise such an appointment was useless and illegal.

We are of opinion, that this appointment was not reinstating the mother in the office

Eastern Dis't
Feb'ary 1827

ROBINS
vs.
WEEKS.

of natural tutrix, but the conferring of a new office; and that there was no positive obligation on the family meeting to appoint her. The tribunals in France, on legislative provisions the same as ours, have carried the doctrine still further, and decided, that "from the moment the consent of the family meeting is obtained, to the tutrix marrying again, she ceases to hold it *de plein droit.*" *Paillette Manuel de droit Francais. Note on the 395th vrt. of Nap. code. Denevers, vol. 5, 156. Sirey, vol. 7, 156.*

As therefore, the tutors in the instance before us, held their appointment under the law, they could not change the domicil of the minor by moving into another state; and her property must be distributed at her death, by the laws of her domicil of origin.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the property, real, personal and mixed, held in common between the appellee, and his sister, Ann Eliza Weeks, deceased, as heirs of the late Caleb Weeks, be partaken by the

Robins
*vs*
Weeks.

parties to the suit in equal portions; and that the case be remanded to the court of probates, to carry said partition into effect—the appellee paying costs of this appeal.

*Watts* & *Lobdell* for the plaintiff, *Peirce* & *Eu..tis* for the defendant.